# DECISIONS

OF THE

# SUPREME COURT OF FLORIDA.

## APRIL TERM, 1873.

14 325
.f41 272

HARBY MOSES, SURVIVING PARTNER, &C., APPELLANT, VS. JOHN T. GILCHRIST AND SON, ET AL., RESPONDENTS.

After trial and verdict, without exceptions taken, and a refusal of a new trial by the Court below, this Court will not interfere to disturb the verdict, if there is any evidence, though slight, to support it, and there is no ground to conclude that the jury were influenced by other considerations than the evidence. The verdict in the present case seems to be fully supported by the evidence.

The Court trying the cause should be accorded a liberal discretion in granting or refusing a new trial.

Appeal from the Circuit Court, Fourth Judicial Circuit, Duval County.

A statement of the case is contained in the opinion of the court.

*E. M. L'Engle* for Appellant.

*J. M.* and *H. J. Baker* for Respondents.

FRASER, J., delivered the opinion of the Court.

This is an action brought by the plaintiff as surviving partner of T. J. Moise & Co., against John T. Gilchrist & Son and John S. Sammis, jointly, upon a promissory note made by Gilchrist & Son, July 12, 1869, for $2,000, payable

sixty days after date to their own order, and endorsed by them and by John S. Sammis in blank, and again endorsed by Gilchrist & Son to Chas. Slager, and by him to Moise & Co. This note and another of the same tenor, but dated July 10, were to be used by Slager in taking up certain acceptances, of Gilchrist & Son held by Moise & Co. On the 24th of July, Slager, without taking up the acceptances specified, delivered the notes to Moise & Co., who claim to have held them thenceforth as collateral security for the acceptances, then amounting to $5,670.15. The note of July 10th was negotiated by Moise & Co., and at maturity paid and taken up by Gilchrist & Son, Moise & Co. loaning to them $500 for that purpose. This was on the 11th September. On the 30th of August Gilchrist & Son paid Moise & Co. $1,500, and on the 24th September $2,000 more on account, and Moise & Co. then surrendered to Gilchrist & Son all their unpaid paper, except the note upon which this action is founded, which they retained, as they say, as security for the balance due them.

On the trial, Sammis insisted that he was but an accommodation endorser, and was not liable to pay the note, because the plaintiffs were not *bona fide* holders for value, the note being held by them as collateral security for a pre-existing debt of Gilchrist & Son, and contrary to the purpose for which it was endorsed by him, and that the subsequent loan of $500 by Moise & Co. to Gilchrist & Son created no liability as to him.

The court charged the jury that the note sued on was the joint and several promissory note of Gilchrist & Son and Sammis—that it was endorsed by Gilchrist & Son to Slager, and by him to plaintiffs to secure the payment of certain acceptances of Gilchrist & Son, in the hands of plaintiffs at the date of the execution and delivery of the note to Slager and by him to plaintiffs.

That if they should find for the plaintiff, the measure of damages would be such amount as they should find from

the evidence to be unpaid upon the indebtedness of Gilchrist & Son in the hands of Moise & Co., at the time of the receipt of the note by Moise & Co., to the extent of the amount of the note and interest.

That should they find that Gilchrist & Son, prior to the commencement of this suit, had paid off these acceptances, for which the note sued on was held as collateral, that they should find for the defendant, and that they were the exclusive judges of the evidence, its weight and credibility.

That where an agreement is made between the holder of a promissory note and the maker, based upon a valid consideration to give additional time for payment, without the knowledge or consent of the surety or endorser, such agreement releases the surety or endorser from liability on the note.

That if the jury find that this note was given as collateral security to the plaintiff to secure a previously existing indebtedness between the plaintiff and Gilchrist & Son, Sammis, as endorser or surety on such note, would not be liable for any subsequent advances or transactions between the plaintiff and Gilchrist & Son, made without his knowledge or consent.

That if the jury find that Moise & Co. received the note as collateral security for the payment of a debt of Gilchrist & Son, previously existing, all payments made by Gilchrist & Son subsequently to the making of the note must be applied to the extinguishment of said debt thereon existing. And at the request of plaintiff's counsel the Court added this modification: "But the Court charges you that John S. Sammis was a joint and several maker of said note together with the said John T. Gilchrist & Son; and the Court further charges you, that John S. Sammis is liable for payments made by plaintiff for the benefit of Sammis."

The verdict was for plaintiff for $283.10.

The plaintiff's counsel moved to set aside the verdict and

for a new trial, on the grounds that the verdict was contrary to the evidence and charge of the Court.

The Court denied the motion. The plaintiff appealed and assigns the denial of the motion for error.

The principal if not the only ground of plaintiff's complaint of the verdict, appears to be the disallowance by the jury of the item of $500 loaned by Moise & Co. to Gilchrist & Son on the 11th September, 1869, for which plaintiffs insist that Sammis is liable to them, and that therein the verdict is contrary to the evidence and the charge of the Court. The Court below manifestly did not so understand it, else a new trial would have been granted them.

If the jury came to the conclusion, as they manifestly did, and we do not see to what other conclusion they could come, that the amount of unpaid indebtedness of Gilchrist & Son to Moise & Co. at the date of their receiving into their hands the note in suit had all been paid, except $170.15 and interest, and that the $500 was a subsequent advance made to Gilchrist & Son without the consent of Sammis, the verdict in this respect conformed strictly to the evidence and the charge of the Court.

The plaintiff swears that on September 24, 1869, Gilchrist & Son paid $2,000, which will be found by computation to have reduced the principal of the old indebtedness to $170.15, and that Moise & Co. then gave up all the Gilchrist paper except the note in suit.

George D. Gilchrist swears that it was understood by the Gilchrists and Moise & Co., that all was paid except $170.15, interest, protest fees, and the loan of $500.

This loan of $500 was made September 11, 1869, thirteen days before the final transaction and taking up of Gilchrists' other paper, and made for the purpose of taking up the note of July 10th, then matured, and consequently no part of the Gilchrists indebtedness at the time the notes were pledged.

It is insisted, however, by the plaintiff that the $500 advanced by Moise & Co. to Gilchrist & Son, September 11th,

1869, was a payment for the benefit of Sammis, and therein the verdict was contrary to the charge.

The jury may have with reason concluded from the evidence that the $500 was no part of the original indebtedness; was loaned to Gilchrist & Son without reference to Sammis, without his consent and without any stipulation as to security, and was not a payment for the benefit of Sammis nor upon the credit of the note, but upon the credit of Gilchrist & Son alone, and to relieve Moise & Co. of the necessity of taking care of the note then matured.

From the whole case, and all the transactions connected with this paper, were not the jury justified in believing that Gilchrist & Son were the principal debtors, and Sammis but a security? All the business was transacted with Gilchrist & Son, all payments made by them. Sammis was neither called on nor consulted, nor knew anything of these transactions. The notes were first given to Moise & Co. by Gilchrist & Son through Slager, and to all this the plaintiff testifies.

In the arrangement of 11th September, plaintiffs cash a draft of $2,250 to Gilchrist & Son, and loaned $500 more, in all $2,750, the draft itself being more than enough to take up the note; Gilchrist & Son pay the note and have a large surplus left. Was this surplus advanced to Gilchrist & Son for Sammis' benefit? The jury manifestly believed that it was not, but a new transaction involving other matters than the original indebtedness for which the notes were pledged.

With these facts before them, we do not see wherein the jury have given their verdict in opposition either to the evidence or the charge of the Court.

After a trial and verdict, without exceptions taken, and a refusal of a new trial by the Court below, this Court will not interfere to disturb the verdict, if there is any evidence, though slight, to sustain it, and there is no ground to conclude that the jury were influenced by other considerations than the evidence.

The Court trying the cause should be accorded a liberal discretion in granting or refusing a new trial.

The question whether the Court erred in the charge to the jury, or in the admission of evidence, is not before us, and upon that we give no opinion.

The judgment of the Court below is affirmed and the cause remitted for further proceedings.

WESTCOTT, J.

The verdict in this case conforms to the evidence, and I agree to an affirmance of the judgment for that reason.